IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYSEAN BARBER, Plaintiff, vs. SCOTT FRAKES, TAGGART BOYD, TED HILL, MIKI HOLLISTER, KRISTINA MILBURN, NATE SHWAB, DR. MARK LUKIN, DR. MEGAN FORD, BETTY GERGEN, JACQUE GOODING, AMY REZNEY, and ROBIN CHURCH, Defendants. | 8:18CV410 **MEMORANDUM AND ORDER** |

This matter is before the court upon review of Plaintiff's Amended Complaint. (Filing 25.) The court conducts this review pursuant to 28 U.S.C. §§ 1915(e) and 1915A which require the court to dismiss a prisoner or in forma pauperis complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. For the reasons explained below, this matter will be dismissed.

## I. BACKGROUND

On August 27, 2018, Plaintiff, an inmate currently confined at the Lincoln Correctional Center ("LCC"), and another inmate, Guy Collins ("Collins"), filed the Complaint in this case. Collins was dismissed as a plaintiff in this action after he failed to advise the court in writing whether he wished to "opt out" or continue with the group litigation. (Filing 13.) Plaintiff, proceeding as the sole plaintiff, sought relief pursuant to 42 U.S.C. §§ 1983 and 1985 against Scott Frakes

("Frakes"), Director of the Nebraska Department of Correctional Services ("NDCS"); Taggart Boyd ("Boyd"), the Warden of the LCC; and 10 employees of the LCC for alleged violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments. Liberally construed, Plaintiff also alleged a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.

The court conducted an initial review of Plaintiff's Complaint on June 10, 2019. (Filing 14.) Because Plaintiff failed to specify in what capacity Defendants were sued, the court presumed they were sued in their official capacity only. Accordingly, Plaintiff's claims for damages against Defendants in their official capacities were barred by sovereign immunity. The court additionally determined that Plaintiff's claims for prospective injunctive relief were moot and he lacked standing to seek declaratory relief because he was confined at the Tecumseh State Correctional Institution ("TSCI") and was no longer subject to the LCC Mental Health Unit ("MHU") Levels Program that was the subject of his Complaint. However, the court granted Plaintiff leave to file an amended complaint that stated a plausible claim for relief against Defendants in their individual capacities.

On July 23, 2019, the court entered a Memorandum and Order and Judgment dismissing this matter without prejudice because Plaintiff failed to file an amended complaint within the allotted time. (Filings 15 & 16.) On August 6 and August 14, 2019, Plaintiff filed motions for relief from judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) because he never received the court's June 10, 2019 Memorandum and Order directing him to file an amended complaint. (Filings 17 & 20.) On February 11, 2020, the court granted Plaintiff's motions, vacated its order and judgment of dismissal, and gave Plaintiff 30 days to file an amended complaint. (Filing 24.)

Plaintiff filed his Amended Complaint on February 24, 2020. (Filing 25.) Along with his Amended Complaint, Plaintiff also filed a Motion for Relief from Judgment seeking relief from the court's prior determination that his claims for

2

injunctive and declaratory relief were moot because Plaintiff had been returned to the LCC MHU. (Filing 26.)

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff's Amended Complaint names the same twelve Defendants as his original Complaint: Frakes, Boyd, and the ten LCC employees making up the MHU Multi-Disciplinary Team. (Filing 25 at CM/ECF pp. 2, 4–5, ¶¶ 2, 13–24.) However, Plaintiff now specifies that eleven of those Defendants are sued in their individual capacities.[1] Plaintiff's Amended Complaint essentially restates the allegations of the original Complaint and raises the same claims under the First, Eighth, and Fourteenth Amendments and the ADA. The Amended Complaint also still lists Collins as a co-plaintiff and is signed by Collins. (*See Id*. at CM/ECF p. 12.) However, Collins is no longer a party to this action, and the court will not address those allegations pertaining solely to Collins.[2]

Plaintiff alleges he has been diagnosed with a serious mental illness and is housed in the MHU at the LCC. (*Id*. at CM/ECF p. 1, ¶ 1.) Plaintiff alleges that the Defendants deprive inmates in the MHU of activities and privileges without affording an inmate a hearing or any of the procedures required by Title 68 of the Nebraska Administrative Code, which sets forth the rules for regulating an inmate's behavior. (*Id*. at CM/ECF pp. 1–2, ¶ 2). Plaintiff further alleges that

---

[1] Plaintiff did not specify in what capacity Defendant Robin Church is being sued. (Filing 25 at CM/ECF p. 5, ¶ 24.)

[2] As a pro se litigant, Plaintiff may not represent the interests of other parties, like Collins. *Litschewski v. Dooley*, No. 11-4105-RAL, 2012 WL 3023249, at *1 n. 1 (D.S.D. July 24, 2012), *aff'd*, 502 Fed. Appx. 630 (8th Cir. 2013). Moreover, in order for Plaintiff to proceed with his claims, he must have standing. As a general rule, to establish standing a plaintiff must assert his legal rights or interests and not "the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). Thus, Plaintiff may only assert his own legal rights and interests in this action and not Collins' legal rights and interests.

additional deprivations of privileges are imposed upon admission into the MHU Levels Program "for reasons not directly having to do with the treatment of a particular mental illness." (*Id.* at CM/ECF pp. 2, 7, ¶¶ 3, 32.) Inmates must sign a consent form and a contract agreeing to the terms of the MHU program prior to entering the MHU and are informed that inmates "can be placed on a therap[e]utic restriction." (*Id.* at CM/ECF p. 7, ¶ 31.) The MHU Multi-Disciplinary Team administers the Levels Program which is "allowed by the Director of Corrections [Frakes] and the Warden of LCC [Boyd]." (*Id.* at ¶ 30.)

On June 1, 2018, Plaintiff alleges he was placed on "level D, which is a restriction that is similar to the sanction 'room restriction' set forth in Title 68," for 17 days without being afforded a hearing based on reports that he had engaged in passing and receiving canteen items with other inmates. (*Id.* at CM/ECF p. 8, ¶ 34.) As a result of being placed on level D, Plaintiff lost his job as the lead porter on the MHU. (*Id.* at ¶ 36.) The other inmate with whom Plaintiff allegedly exchanged canteen items did not receive any type of restriction for his alleged misconduct. (*Id.* at CM/ECF p. 9, ¶ 37.)

Plaintiff alleges the MHU Multi-Disciplinary Team's enforcement of the Levels Program violated the First, Eighth, and Fourteenth Amendments, and that "[a]ll Defendants, by agreeing to the enforcement of the levels program, . . . did conspire, for the purpose of depriving, either directly or indirectly, Plaintiffs and others similarly situated of the equal protection of the laws, or of equal privileges or immunities under the laws." (*Id.* at CM/ECF pp. 10–11, ¶¶ 44–45.) For relief, Plaintiff seeks a declaration that the Levels Program is unconstitutional, injunctive relief enjoining the continuation of the MHU Levels Program, and monetary damages. (*Id.* at CM/ECF p. 11.)

4

## III. DISCUSSION

### A. Claims for Injunctive and Declaratory Relief

As stated above, Plaintiff's Amended Complaint seeks injunctive and declaratory relief with respect to the MHU Levels Program. Plaintiff also filed a motion pursuant to Fed. R. Civ. P. 60(b) specifically seeking relief from the court's prior determination that his claims for injunctive relief were moot and he lacked standing to seek declaratory relief because he had been returned to the MHU at the LCC. (Filing 26.) Recently, however, Plaintiff filed a motion on August 14, 2020, asking to withdraw his Rule 60(b) motion for the reason that he is "no[] longer on the MHU, and thus cannot obtain the injunctive and declaratory relief requested in his complaint." (Filing 27.)

Upon consideration, Plaintiff's motion to withdraw his Rule 60(b) motion (filing 27) is granted. The court will dismiss Plaintiff's claims for injunctive and declaratory relief pursuant to his motion and the court's reasoning in its previous order on initial review (filing 14 at CM/ECF pp. 5–6).

### B. First Amendment

Plaintiff alleges Defendants conspired to deprive him of his "right to freedom of speech" "by depriving him of privileges for disciplinary reasons without adhering to the procedure promulgated in Title 68." (Filing 25 at CM/ECF p. 2, ¶ 4.)

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, "[a]ny form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech."

5

*Beaulieu v. Ludeman*, 690 F.3d 1017, 1038–39 (8th Cir. 2012) (internal quotation marks omitted). A prison action is constitutionally valid, even if it restricts a prisoner's constitutional rights, provided it is "'reasonably related to legitimate penological interests.'" *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). As the Eighth Circuit Court of Appeals has explained:

> "Because the Constitution 'permits greater restriction of [First Amendment] rights in a prison than it would allow elsewhere,' restrictive prison regulations are normally reviewed under the four-factor *Turner* test to determine whether they are 'reasonably related to legitimate penological interests.'" [*Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012)] (citing *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). . . . We consider four criteria in applying this test:
>
>> (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest.

*Beaulieu*, 690 F.3d at 1039 (quoting *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989)).

Here, Plaintiff's bare, conclusory allegation that the MHU Levels Program violates his First Amendment right to free speech is unsupported by sufficient factual allegations to state a plausible claim for relief. For example, Plaintiff does not allege that he engaged in, or attempted to engage in, any protected speech nor does he allege how the imposition of any restriction under the Levels Program impeded his freedom of speech. Plaintiff's allegations fail to meet the pleading

6

standard set forth in Federal Rule of Civil Procedure 8(a)(2) requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Therefore, Plaintiff has failed to state a First Amendment free speech claim upon which relief may be granted.

## C. Due Process

Plaintiff alleges his due process rights were violated when Defendants deprived him of privileges for punitive purposes without adhering to the disciplinary procedures set forth in Title 68 of the Nebraska Administrative Code. More specifically, Plaintiff appears to allege that his due process rights were violated when he was placed on a 17-day room restriction without a hearing and lost his lead porter job as a result.

The Supreme Court has held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). In order to prevail on a Fourteenth Amendment due process claim, a plaintiff must allege that he was deprived of life, liberty or property by government action. *Phillips v. Norris, 320 F.3d 844*, 846 (8th Cir. 2003). With respect to actions filed by prison inmates, the court must determine whether the deprivation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (noting that following *Sandin*, courts focus on the deprivation itself and not on whether

7

mandatory language exists in statutes or prison regulations). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

Here, Plaintiff's 17-day room restriction plainly does not rise to the level of atypical and significant. *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (inmate was not deprived of liberty interest during nine months in administrative segregation). The Eighth Circuit has consistently held that "administrative and disciplinary segregation are not atypical and significant hardships[.]" *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002); *Phillips*, 320 F.3d at 847 ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."); *see also Freitas v. Ault*, 109 F.3d 1335, 1337–38 (8th Cir. 1997) (finding that a prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment); *Kennedy v. Blankenship*, 100 F.3d 640, 642–43 n.2 (8th Cir. 1996) (stating that punitive isolation is not an atypical and significant deprivation). Thus, to the extent the plaintiff is claiming the 17-day room restriction violated his due process rights, this claim must be dismissed.

Similarly, to the extent Plaintiff complains that the loss of his lead porter job violated his due process rights, his claim fails. The Eighth Circuit has long held that the loss of a prison job, the compensation derived from that job, or the expectation of keeping a particular prison job does not implicate any property or liberty interest entitled to due process protection. *See Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987) ("[I]nmates have no constitutional right to be assigned to a particular job."); *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir. 1984) (concluding an inmate has no constitutional right to a prison job nor to retain a particular job); *Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir. 1981) (determining inmate had no legal entitlement or right to particular job assignment). *See also Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989); *Garza v. Miller*, 688 F.2d 480, 485 (7th Cir. 1982). Moreover, the loss of a prison job is not an atypical or significant hardship in

8

relation to the ordinary incidents of prison life. *See Callender*, 88 F.3d at 670 (reversing a judgment in favor of an inmate for denial of procedural and substantive due process because the inmate had no constitutionally protected liberty interest in a work release program, and revocation of his work release status did not impose an atypical and significant hardship upon him in relation to the ordinary incidents of prison life); *see also Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49–50 (5th Cir. 1995) (holding inmate's termination from his UNICOR job and reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).

Accordingly, to the extent Plaintiff is attempting to allege a due process claim arising from the loss of his lead porter job, this claim must be dismissed. Plaintiff's Amended Complaint, therefore, fails to allege any due process claim upon which relief may be granted.

### D. Eighth Amendment

Plaintiff also alleges that the deprivation of privileges without proper disciplinary procedures violated the Eighth Amendment prohibition against cruel and unusual punishment. Though unclear from Plaintiff's allegations, Plaintiff may be claiming that the imposition of the 17-day room restriction and the related loss of privileges such as exercise, visiting the library and other inmates, and his lead porter job violated his Eighth Amendment rights.

"The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted). Administrative segregation "is not necessarily unconstitutional [under the Eighth Amendment], but it may be, depending on the duration of the confinement and the

9

conditions thereof." *Hutto v. Finney*, 437 U.S. 678, 685–86 (1978) (internal quotations omitted).

> To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk."

*Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

Here, Plaintiff's relatively brief time on level D room restriction and the concomitant loss of privileges he sustained fall far short of suggesting the denial of the minimal civilized measure of life's necessities. As Plaintiff admits, the loss of privileges, with the exception of his lead porter job, was only temporary, and he does not allege a denial of "reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Thus, Plaintiff's claim that his 17-day room restriction and loss of privileges violated the Eighth Amendment must be dismissed.

To the extent Plaintiff may be claiming that the deprivation of privileges for purposes unrelated to treatment of his mental illness violated the Eighth Amendment, such claim also fails. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). To prevail on an Eighth Amendment deliberate indifference claim, Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately disregarded,

10

those needs. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (Eighth Amendment claim based on inadequate medical attention requires proof that officials knew about excessive risks to inmate's health but disregarded them and that their unconstitutional actions in fact caused inmate's injuries); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). Here, Plaintiff merely disagrees with Defendants' imposition of therapeutic restrictions for punitive purposes rather than for treatment purposes. Plaintiff does not claim that Defendants delayed or denied him any medical care or treatment for his mental illness and, therefore, has not alleged an Eighth Amendment violation. *See Orr*, 610 F.3d at 1034–35 (affirming dismissal of prisoner's Eighth Amendment claim where prisoner did not claim prison officials delayed or denied medical care).

### E. Equal Protection

Plaintiff also alleges Defendants violated his equal protection rights by depriving him of privileges available to general population inmates for the purpose of punishment without adhering to proper disciplinary procedures. Liberally construed, Plaintiff further asserts that the MHU Multi-Disciplinary Team violated equal protection by failing to consistently discipline or place restrictions on each inmate involved in the same alleged misconduct. (Filing 25 at CM/ECF p. 8, ¶ 33.) Specifically, Plaintiff alleges the other inmate with whom Plaintiff allegedly passed and received unauthorized canteen items was not placed on level D like Plaintiff was or any other restriction. (*Id.* at CM/ECF p. 9, ¶ 37.)

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The government is required to treat similarly situated people alike, *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), and this requirement extends to prison inmates. *Turner v. Safley*, 482 U.S. 78, 84 (1987).

11

To prevail on an equal protection claim, an inmate plaintiff must allege he was treated differently than a similarly situated class of inmates, that the different treatment burdened one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest. *Murphy v. Missouri Dept. of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004).[3] Taking the allegations of Plaintiff's Amended Complaint as true, Plaintiff has failed to allege that his equal protection rights were violated. Plaintiff does not allege that he was similarly situated to general population inmates, and the fact that inmates in the MHU sign and acknowledge the terms of the MHU program prior to admittance undermines any inference that MHU and general population inmates are similarly situated. *See Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) (per curiam) (federal prisoner's placement in a special housing unit and denial of the same privileges as general-population inmates did not support federal prisoner's equal-protection *Bivens* claims, where prisoner was not similarly situated to the general-population inmates and thus could not show he was treated differently from similarly situated class of inmates). Nor does Plaintiff allege that he was similarly situated to the inmate who was also allegedly engaging in the same misconduct as Plaintiff; that is, the other inmate is not alleged to be an inmate within the MHU. Even if it could be reasonably inferred that the other inmate is similarly situated to Plaintiff, Plaintiff has not alleged that the different treatment burdened one of his fundamental rights.

**F. 42 U.S.C. § 1985**

Citing 42 U.S.C. § 1985, Plaintiff alleges that Defendants conspired to deprive him of his civil rights. (Filing 25 at CM/ECF p. 2, ¶ 4.) However, 42 U.S.C. § 1985(1) and (2) (interference with performance of official duty;

---

[3] To the extent Plaintiff's allegations could be construed as asserting mentally ill or mentally disabled inmates are a suspect class, such assertion fails. *See More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (physically disabled inmates not a suspect class (citing *City of Cleburne*, 473 U.S. at 441–43)).

12

obstruction of justice and intimidation of party, witness or juror) have no application to Plaintiff, and Plaintiff fails to state a claim under 42 U.S.C. § 1985(3). As the Eighth Circuit Court of Appeals has explained:

> In order to prove the existence of a civil rights conspiracy under § 1985(3), the [plaintiff] must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). . . . "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'"

*Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir.1989)). In addition, Plaintiff "must allege that an independent federal right has been infringed. Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights. The source of the right or laws violated must be found elsewhere." *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004).

While Plaintiff has alleged a class-based discriminatory animus based on mental illness or disability, Plaintiff's conspiracy claims fail for two reasons. First, as discussed above, the independent federal rights Plaintiff claims were infringed were his rights to free speech under the First Amendment, to be free from cruel and unusual punishment under the Eighth Amendment, and to due process and equal protection under the Fourteenth Amendment. However, Plaintiff has not stated a claim upon which relief may be granted under any of those constitutional provisions. Accordingly, Plaintiff's § 1985(3) claim cannot proceed pursuant to an alleged violation of Plaintiff's rights under the First, Eighth, or Fourteenth

Amendment. Second, Plaintiff's conclusory allegations that a conspiracy existed between Defendants are insufficient to state a claim for relief. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1077–78 (8th Cir. 2016) ("In order to state a claim for conspiracy under § 1985, a plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. This standard requires that allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." (internal quotation marks and citations omitted)); *Cooper v. Delo*, 997 F.2d 376, 377 (8th Cir. 1993) (per curium) (complaint subject to dismissal if allegations of conspiracy are inadequate; plaintiff must allege facts suggesting mutual understanding between defendants or meeting of minds).

Accordingly, Plaintiff has not alleged any claims on which relief may be granted pursuant to 42 U.S.C. § 1985(3), and such claims will be dismissed.

**G. ADA**

Liberally construed, Plaintiff's Complaint asserts a claim under the ADA, which is divided into three parts:

> Title I prohibits employment discrimination, 42 U.S.C. § 12112, Title II prohibits discrimination in the services of public entities, 42 U.S.C. § 12132, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services, 42 U.S.C. §§ 12182, 12184.

*Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998).

Title II of the ADA applies to prisons, and it provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of

14

a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *United States v. Georgia*, 546 U.S. 151, 154 (2006) (a "public entity" under § 12132 includes state prisons); *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009) ("[R]ecreational activities, medical services, and educational and vocational programs at state prisons are benefits within the meaning of Title II." (internal quotation marks omitted)).

Plaintiff sues eleven of the twelve Defendants in their individual capacities, but Title II ADA claims may only be brought against the Defendant corrections officials and employees in their official capacities. *See Dinkins v. Correctional Med. Svs.*, 743 F.3d 633 (8th Cir. 2014) (correctional officers could not be sued in their individual capacities under the ADA); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (explaining that Title II provides disabled individuals redress for discrimination by a "public entity," which does not include individuals).

To the extent Plaintiff alleges an official capacity claim against Defendant Robin Church, a member of the MHU Multi-Disciplinary Team, Plaintiff's claims for damages under the ADA are barred by sovereign immunity. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc) (holding that Title II of the ADA, governing discrimination by public entities, did not validly abrogate States' Eleventh Amendment immunity from suit by private individuals in federal court). While prospective injunctive relief against state officials in their official capacities is permitted under the ADA, *see Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (permitting ADA claims for prospective injunctive relief against state official sued in official capacity), Plaintiff has abandoned his claims for prospective injunctive relief, and such claims would be moot given that Plaintiff is no longer in the MHU. *See* Section III.A. *supra*. Thus, even if Plaintiff

15

had alleged a plausible claim under the ADA,[4] he does not seek any relief that may be granted under the act.

## IV. CONCLUSION

Plaintiff's Amended Complaint fails to state a plausible claim for relief against the Defendants under the First, Eighth, or Fourteenth Amendments. Plaintiff has also failed to state a claim under 42 U.S.C. § 1985 or the ADA. Accordingly, the court will dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted without leave to amend as the court concludes that further amendment would be futile.

IT IS THEREFORE ORDERED that:

1. Plaintiff's motion to withdraw his Rule 60(b) motion (filing 27) is granted. The clerk of the court is directed to terminate the motion event for Filing 26.

2. This matter is dismissed for failure to state a claim upon which relief may be granted.

3. The court will enter judgment by a separate document.

---

[4] In order to sufficiently allege a Title II ADA claim, Plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the jail's services, programs, or activities, or was otherwise subjected to discrimination by the jail; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *see also Folkerts v. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). Here, Plaintiff fails to satisfy the first element as he alleges absolutely no facts to support a finding that he is a qualified individual with a disability.

Dated this 1st day of October, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge